**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────

WILLIAM E. WARD, JR.,

                         Petitioner,

                                             No. 03-CV-270
                                              (LEK/DRH)

J. SMITH, Superintendent,

                         Respondent.

────────────────────────────────

**APPEARANCES:**                       **OF COUNSEL:**

WILLIAM E. WARD, JR.
Petitioner Pro Se
No. 99-B-1473
Shawangunk Correctional Facility
Post Office Box 700
Wallkill, New York 12589

HON. ELIOT SPITZER               MARIA MORAN, ESQ.
Attorney General for the          Assistant Attorney General
  State of New York
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

       Petitioner pro se William E. Ward ("Ward") is currently an inmate in the custody of

the New York State Department of Correctional Services (DOCS) at Shawangunk

Correctional Facility. Ward was found guilty of criminal possession of a dangerous weapon

in the first degree after a jury trial in Delaware County Court.  Ward was sentenced on June

──────────────────

     [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

14, 1999 to a total determinate term of twenty-five years imprisonment and is currently

serving that sentence. Ward now seeks a writ of habeas corpus pursuant to 28 U.S.C. §

2254 on the following grounds:

1. the verdict was against the weight of the evidence;

2. the trial court erred in denying his motion for dismissal;

3. the trial court erred by failing to sanction the prosecution for <u>Rosario</u> violations;[2]

4. the destruction of evidence denied his right to a fair trial;

5. he was denied the effective assistance of trial counsel;

6. the sentence imposed was harsh and excessive; and

7. he was denied the effective assistance of appellate counsel.

Also pending are Ward's request to lift the stay of his petition (Docket No. 37) and

his motion to expand the record (Docket No. 38). For the following reasons, it is ordered

that the stay be lifted and Ward's motion to expand the record be denied, and it is

recommended the petition be denied.


## I. Background

In August 1998, Ward confided to a friend and neighbor, Kenneth Powers

("Powers"), that he wanted to kill Sheila Jones ("Jones"), Ward's former girlfriend and the

mother of his two children. Ward was angry because their relationship had ended, Jones

was seeking custody of their two children, and she was seeing another man. SR. 392, 443-

---

[2] <u>People v. Rosario</u>, 213 N.Y.S.2d 448 (1961) (holding that a prosecutor's failure to deliver a prior statement of a witness to be called at trial constitutes per se error requiring a new trial).

446.[3]  In September 1998,  Ward asked Powers if he would participate in his plan to "blow

up" Jones.  SR. 445-46. Ward agreed to pay Powers $500 to place a pipe bomb in Jones'

car. SR. 447-52, 460. In October 1998, Ward discussed construction of the bomb with

Powers, arrived at Powers' home with shotgun shells that he purchased at Wal-Mart, and

told Powers that he researched how to build a bomb. SR. 445, 450-56, 490.

In November 1998, Ward again discussed the bomb with Powers and expressed his

wishes to see Jones dead. SR. 456-57. Ward asked Powers to place the bomb next to the

exhaust manifold of Jones' car while it was parked at her place of employment because

both Jones and her boyfriend would be in the car at that time. SR. 456-59, 488, 585.  Ward

showed Powers where Jones' car would be parked and told Powers he would pay him from

the proceeds of a life insurance policy on Jones' life. SR. 460, 488.

Powers informed the New York State Police of Ward's plans. SR. 461. When Powers

next visited Ward's home, Ward showed him the completed bomb. SR. 459, 464-67.

Powers notified police that Ward had completed construction of the bomb. SR. 467. On

November 24, 1998, Powers was fitted with a wire and his conversation with Ward

regarding final plans for placement of the bomb was recorded. SR. 485, 933. Investigators

searched Ward's home and retrieved the pipe bomb and the materials used in its

construction. SR. 813-14, 1122-25.  The device was later taken to a quarry where it was

detonated by the New York State Police. SR. 819-20.

Ward was arrested, indicted, tried, convicted, and sentenced as indicated above.

The Appellate Division affirmed Ward's conviction. People v. Ward, 282 A.D.2d 819 (3d

---

[3] "SR." followed by a number refers to the pages of the state court records of
Ward's case filed by respondent with his answer. Docket No. 21.

Dep't 2001).  Leave to appeal to the New York Court of Appeals was denied on September 14, 2001. People v. Ward, 96 N.Y.2d 942 (2001). This action followed.

## II. Discussion

### A. Legal Standards

A federal court may grant habeas relief only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) (1996).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law . . . ." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., writing for the Court in Part II of her opinion).  Under the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

To adjudicate a claim on the merits, the state court need not mention the argument raised or cite relevant case law . . . or even explain[] its reasoning process . . . .  Rather, a state court adjudicates a claim on its merits by (1) dispos[ing] of the claim on the merits, and (2) reduc[ing] its disposition to judgment." Eze v. Senkowski, 321 F.3d 110, 121 (2d Cir. 2003) (internal quotation marks and citations omitted). "A state-court decision is 'contrary to' [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the

4

governing law set forth in [the Supreme Court's] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Early v. Packer, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000)). "The court may grant relief under the unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 695 (2002).

**B. Insufficient Evidence**

Ward first contends that the jury verdict was against the weight of the evidence. Respondent contends that this claim is not cognizable in this action.

A defendant who claims that the evidence was not sufficient to sustain a conviction bears a "heavy burden." United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000). The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the jury and are not grounds for reversal. See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). "[T]he critical inquiry on review of the sufficiency of the evidence. . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry asks the court to determine if, "after viewing the evidence in the light most favorable to the prosecution[,] . . . *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Id. at 319, see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

When reviewing the sufficiency of evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Fama, 235 F.3d at 810.  Here, Ward was convicted of criminal possession of a dangerous weapon in the first degree in violation of N.Y. Penal Law § 265.04 (McKinney 2000). "A person is guilty of criminal possession of a dangerous weapon in the first degree when he possesses any explosive substance with intent to use the same unlawfully against the person or property of another." N.Y. Penal Law § 264.04.

Specifically, Ward contends that there was no evidence at trial to support the jury's finding that the pipe bomb contained an explosive substance, was capable of causing an explosion, or that an adequate heat source or igniting mechanism was present. Ward further contends that Trooper Brian Mahoney lacked the requisite expertise to testify that an exhaust manifold in a car would generate enough heat to ignite a pipe bomb.

Mahoney was involved in the execution of the search warrant on Ward's home on November 24, 1998 when the device was confiscated. SR. 813-14. Mahoney worked in the bomb disposal unit of the New York State Police. SR. 810-13. Once the device was discovered, it was transported to a bunker in Melrose, New York to secure it and was taken to a quarry to disarm it on December 3, 1998. SR. 819-20.  In order to disarm the device, the device was detonated and a substance inside the device ignited. SR. 821. Mahoney opined that the substance that ignited in the device was a type of explosive powder. SR. 821. Mahoney also testified that if this type of device was placed next to an exhaust manifold of a car, the heat transference from the manifold would be sufficient to detonate

6

the device and could cause damage to the vehicle and cause serious injury or death to the occupants of the vehicle. SR. 825-26.

Trooper John Curry also participated in the execution of the search warrant on Ward's home and the retrieval and detonation of the device. SR. 1165-66. Curry testified that the device was made of shotgun slugs hammered into the end of a pipe. SR. 1174. Curry testified that white smoke came from the device as it was detonated and the remaining pieces were bagged as evidence. SR. 1183a. Curry also testified that such a device could explode and cause serious physical injury if exposed to heat generated by an exhaust manifold of a car. SR. 1180-92.

Ward's counsel cross-examined Mahoney and Curry extensively and called into question the procedures in detonation of the device found in Ward's home. SR. 828-81. Ward sought to rebut the testimony of Curry and Mahoney with a defense witness, Gerald Hurst, who testified that the device as described would not have been capable of exploding. SR. 1198-1293. However, viewing the evidence in the light most favorable to the prosecution, the testimony of Mahoney and Curry sufficed for the jury to conclude that the device found at Ward's home contained an explosive substance.

In addition, there was sufficient evidence that Ward had the intent to use the device unlawfully against Jones. Jones' testimony reflected that there was animosity between Jones and Ward since she moved out of their residence. SR. 393-98. Jones also testified that although she had changed the beneficiary on her life insurance policy, Ward was not aware of it. SR. 393-98. Ward had threatened to kill her in the past. SR. 399. Powers' testimony also supports the jury's verdict. Ward told Powers that he intended to kill Jones, agreed to pay Powers $500 to help him, constructed the device with shotgun shells that he

7

purchased at Wal-Mart, and displayed the device to Powers. SR. 446-47.

Ward testified on his own behalf and presented his version of the events. SR. 998, 1006, 1017, 1025-27, 1033-35, 1052.  In addition, Ward  cross examined all of the prosecution's witnesses. The record evidence could reasonably support a finding of guilt beyond a reasonable doubt. In addition, the Appellate Division's finding on the merits that there was sufficient evidence for the jury to conclude that the pipe bomb contained an explosive substance or that it was capable of exploding did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Therefore, the petition on this ground should be denied.

### C. Trial Court Determinations

Ward next contends in grounds two and three of his petition that the trial court erred in denying his motion for an order of dismissal and in failing to sanction the prosecution for Rosario violations. Respondent contends that these claims are not available for review by this court.

Habeas relief is only available to correct errors of constitutional dimensions or violations of federal law.  28 U.S.C. § 2254(a) (1994).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal habeas courts review state court evidentiary decisions only for consistency with due process.  See Patterson v. New York, 432 U.S. 197,

8

202 (1977); see also Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988).  A state court ruling does not rise to the level of due process violation unless it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Patterson, 432 U.S. at 202.

Ward moved for a trial order of dismissal pursuant to N.Y. Penal Law § 290.10 on the grounds that the evidence presented was legally insufficient to establish that the pipe was explosive and that Powers' testimony was not credible and contained inconsistencies. SR. 968. The motion was denied by the court. SR. 968. There is no indication in the record that this denial deprived Ward of a fair trial. There was sufficient evidence, as discussed supra subsection (B), for the jury to conclude that the device found in Ward's home contained an explosive substance. Therefore, the trial court's denial of Ward's motion for dismissal was based on state law and did not violate Ward's due process rights. In addition, the Appellate Division decision that the county court did not err in denying this motion was not contrary to and did not involved an unreasonable application of federal constitutional law.

In ground three, Ward contends that the trial court abused its discretion by failing to sanction the prosecution for its allegedly repeated Rosario  violations. The bomb disposal report was not disclosed until after opening statements and Ward requested sanctions in the form of preclusion of anything contained in the report. SR. 472-73. The court denied Ward's request for sanctions because the majority of the information in the report had already been provided and any additional information was not substantial enough to prejudice the defense.  SR. 474- 79.

9

Ward also requested sanctions in the form of a mistrial for the prosecution's delay in the turnover of notes which were generated as a result of the search of Ward's apartment. SR. 713-18 The trial judge conducted a hearing and found that there was no deliberate withholding of the document,  no substantial prejudice, and that sanctions were not necessary.   SR. 718-51. The determination as to whether to impose sanctions is purely a question of state law and the trial court's refusal to impose a sanction did not violate Ward's constitutional rights.  Whittman v. Sabourin, No. 00 Civ. 2867 (SAS), 2001 WL 687369, at *11-12 (S.D.N.Y. June 8, 2001).

Therefore, the petition on these grounds should be denied.

## D. Brady Violations

In ground three, Ward also asserts that the prosecution repeatedly failed to turn over exclupatory material.  Respondent contends that the prosecution did not fail to turn over any exculpatory evidence.

While this claim is asserted as a violation of the New York Rosario rule, liberally construing Ward's petition, Ward also argues that there was a violation of Brady v. Maryland, 373 U.S. 83 (1963). Under Brady, a prosecutor must disclose evidence favorable to the defense.  Id. at 85.  "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; the evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence is material if there is a "reasonable probability" that the result would have been different if the suppressed information had been disclosed to the defense.

10

Id. at 280; see also United States v. Avellino, 136 F.3d 249, 256 (2d Cir. 1998).  In addition, destruction of potentially exculpatory evidence violates Brady only if the police acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 488 (1984).

Ward contends that his due process rights were violated because the prosecution destroyed the device found at his home. The pipe bomb was detonated for safety reasons, the remains were still available, and Ward's expert was able to testify as to their composition and that the material would not have exploded if placed next to the exhaust manifold of an automobile. SR. 821, 862, 1222-29. Therefore, no material was withheld by the prosecution.

Ward fails to demonstrate that had the device not been detonated, there was a "reasonable probability" that the result would have been different.  Testimony reflected what the device looked like prior to detonation. SR. 840-46.  There is also no showing that this evidence would have been favorable to Ward.  The prosecution disclosed the results of the tests and the contents of the bomb disposal report. SR. 472-73. The device was detonated in such a manner as to minimize any damage to preserve evidence and both Hurst and Curry testified that it could have been tested after detonation. SR. 1181, 1234.

In addition, the Appellate Division's decision on this issue was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Therefore, the petition on this ground should be denied.

### E. Ineffective Assistance of Counsel

### 1. Trial Counsel

Ward contends that he was denied the effective assistance of trial counsel.

Respondent contends that Ward received the effective assistance of counsel.

To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong

test: (1) counsel's performance was deficient, and (2) this deficiency prejudiced the

petitioner's defense.  See United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000)

(citing Strickland v. Washington, 466 U.S. 668 (1984)).  To satisfy the first prong, a court

must ask "whether defense counsel's actions were objectively reasonable considering all

the circumstances."  Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  This inquiry

requires a court to be "highly deferential" to counsel's performance.  Strickland, 466 U.S. at

689.  Moreover, there is a strong presumption that counsel's conduct at trial was

reasonable and that any challenged conduct might be considered sound trial strategy.

Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (per curiam) (internal quotations omitted);

see also Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir. 1987).  To satisfy the second prong,

a court must determine whether there is a reasonable probability that, but for the deficiency,

the outcome of the proceeding would have been different.  McKee v. United States, 167

F.3d 103, 106 (2d Cir. 1999). "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

Specifically, Ward contends that he was deprived of the effective assistance of trial

counsel when counsel failed properly to advise him of the maximum sentence he faced.

Ward contends that his trial attorney advised him that the maximum sentence he faced was

eight and one-third to twenty-five years imprisonment if convicted after trial. The record demonstrates, however, that at arraignment, the court notified Ward that he could receive a sentence of eight and one-third to twenty-five years in state prison. SR. at Ex. 16. The fact that Ward received the maximum sentence does not demonstrate ineffective assistance of counsel.

Ward's contention that if he had properly understood the sentencing exposure, he would have accepted the plea offer of three years is not plausible in light of the minimum sentence of  eight and one-third years. Ward also contends that his attorney's failure to request an adverse interest charge as a result of the destruction of the pipe bomb constituted ineffective assistance of counsel. There was no basis to request such a charge, however.

Ward also contends that his attorney failed to pursue an entrapment defense. To show entrapment, the government by its conduct must have induced the commission of the crime and the defendant must have lacked the predisposition to engage in such criminal conduct." United States v. Damblu, 134 F.3d 490, 495 (2d Cir. 1998). This defense was not available to Ward as it was Ward, not the government, who conceived the crime, and the Finally, Ward contends that his attorney failed properly to request testing of the remains of the pipe bomb. The trial court denied Ward's motion for expert fees without prejudice because the application contained only defense counsel's assertions. Ward was, however, able to present an expert to testify and defense counsel was provided with a copy of the bomb disposal report. There is no other indication in the record that trial counsel's performance fell below an objective standard.

13

Respondent also contends that Ward failed to exhaust the issue of ineffective assistance of counsel claim regarding the failure of his attorney to present an entrapment defense in his appeal to the New York Court of Appeals. By failing to present this particular basis for this claim to the "highest court of the state," Ward failed to satisfy the exhaustion requirement of § 2254(b) regarding his contention that trial counsel's failure to pursue an entrapment defense constituted ineffective assistance of counsel.  Morgan v. Bennett, 204 F.3d 360, 368 (2d Cir. 2000); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).  Therefore, as to Ward's claim here regarding an entrapment defense, Ward's claim in the alternative should be dismissed for failure to exhaust.

Accordingly, the petition on this ground should be denied.


### 2. Appellate Counsel

In ground seven of his petition, Ward contends that he was denied the effective assistance of appellate counsel when his appellate attorney failed to raise significant and meritorious issues on direct appeal. Respondent contends that Ward received the effective assistance of appellate counsel.

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that (i) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, i.e., such error caused prejudice to the petitioner. Smith v. Robbins, 120 S. Ct. 746, 752 (2000); Strickland, 466 U.S. at  688, 694.  When challenging the effectiveness of appellate counsel, a petitioner must show that

14

counsel "omitted significant and obvious issues on appeal while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

A petitioner asserting constitutionally deficient performance must show more than counsel's failure to raise a nonfrivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments. Jones v. Barnes, 463 U.S. 745, 751-52 (1983); Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001). Moreover, the Sixth Amendment does not require that all colorable state law arguments be raised on direct appeal. Sellan, 262 F.3d at 310.

Specifically, Ward contends that his appellate counsel was ineffective for failing to argue on appeal that the trial court erred in refusing to sanction the prosecution for Rosario violations and for admitting out-of-court statements made by a fellow inmate. Ward's appellate counsel pursued issues that were significant and omitted those that he had determined were weaker in his professional judgment. Even if counsel had presented these claims on appeal, it is not likely that they would have affected the outcome of Ward's appeal.

Ward's appellate attorney submitted eight claims on appeal, presented a nineteen-page brief with thirty pages of exhibits, and effectively argued these issues on appeal. Ward was able to submit a pro se supplemental brief as well. There is no indication that appellate counsel's performance fell below an objective standard.

Moreover, the Appellate Division's denial of Ward's motion for a writ of error coram nobis did not mention the Sixth Amendment or relevant case law, and there is nothing to indicate that the claims raised were decided on anything but substantive grounds. Aparicio

15

v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). When a state court does not explain the rationale for rejection of a petitioner's claim, but nevertheless rejects a claim on the merits, the federal court must "focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Id. at 94.

As discussed above, Ward was not deprived of the effective assistance of appellate counsel.  The Appellate Division's decision did not result in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Therefore, the petition on this ground should be denied.


### F. Harsh and Excessive Sentence

In ground six of his petition, Ward contends that the sentence imposed was harsh and excessive. Respondent contends that this claim is not cognizable in this proceeding.

Relief under 28 U.S.C. § 2254 is available to correct constitutional errors or violations of federal law, thus limiting review to determinations whether convictions violate the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a) (1994); Estelle, 502 U.S. at 68. It is not the "province of a federal habeas court to reexamine state-court determinations on state-law questions" unless a constitutional violation has occurred. Estelle, 502 U.S. at 67-68. If a sentence imposed by a state court is within the limits set by statute, there is no ground for habeas relief. Townsend v. Burke, 334 U.S. 736, 741 (1948). There is no federal  constitutional due process violation when the sentence imposed is

16

within the statutory range even if prior arrests are considered. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Dorsey v. Irvin, 56 F.3d 425, 427 (2d Cir. 1995).

Here, Ward was sentenced to a determinate term of twenty-five years imprisonment. Ward was found guilty after a jury trial of criminal possession of a dangerous weapon in the first degree, which is a class B violent felony. N.Y. Penal Law §§ 70.02, 265.04 (McKinney 2000).  The maximum term of imprisonment for a violent class B felony is twenty-five years. N.Y. Penal Law § 70.02 (3)(a) (McKinney 2004). Therefore, the sentence was within the statutory maximum and there is no due process violation.

In addition, at sentencing, the court considered the pre-sentence report, a crime victim impact statement, letters written on behalf of Ward, testimony at trial that Ward attempted to enlist another inmate to kill Kenneth Powers, and the opinion of the mental health service of Chenagno County that Ward was a dangerous threat to himself and others. SR. 1469-78. Both attorneys were able to make arguments at sentencing and Ward was able to make a statement as well. SR. 1472-77. The crime was a serious one and the sentence was within the statutory range. In addition, the Appellate Division reviewed this claim and found that there was no basis to modify his sentence. This decision on the merits met the standards described above.

Therefore, the petition on this ground should be denied.

### III. Motion to Lift Stay

On May 4, 2004, Ward filed a motion to stay this proceeding in order to exhaust his state court remedies with respect to his ineffective assistance of trial counsel claim. Docket No. 29.  This motion was granted on May 5, 2004. Docket No. 31. On December 13, 2004 Ward notified the Court that the state court declined to reconsider its denial of his motion to

vacate his sentence and now requests that the stay be lifted. Docket No. 37. Accordingly, Ward's request that the stay be lifted is granted.

## IV. Motion to Expand the Record

By his second motion to expand the record,[4] Ward seeks to supplement the state court record in support of his claim of ineffective assistance of appellate counsel. Docket No. 38. Respondent contends that the exhibits that Ward seeks to supplement are already included in the present state record.

Rule 7 of the Rules Governing Section 2254 Cases permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the court's resolution of the petition.  The decision whether to order Rule 7 expansion is within the sound discretion of the district judge. Ford v. Seabold, 841 F.2d 677, 691 (6th Cir. 1988). Here, Ward seeks to add exhibits from his motion for a writ of error coram nobis which are already part of the state court record. See SR. at Ex. 10.  Accordingly, Ward's motion to expand the record is denied as moot.

## V.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**; and

**IT IS ORDERED** that Ward's motion to lift the stay (Docket No. 37) is **GRANTED**; and

---

[4] Ward's first motion to expand the record was granted on May 5, 2004 and these documents were included in the official state court record. Docket No. 31.

**IT IS FURTHER ORDERED** that Ward's motion to expand the record (Docket No. 38) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:  April 27, 2005
        Albany, New York

_____
United States Magistrate Judge

19